UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FATIMA CRISTINA OCCHIUZZO,

                Plaintiff,

       - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5914 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Fatima Cristina Occhiuzzo brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), against Defendant Commissioner of the Social Security Administration ("SSA"), seeking judicial review of the SSA's denial of her claims for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 12, 15.) For the reasons explained below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I. Factual and Procedural Background

Plaintiff, born in August 1969, was 44 years old on October 16, 2013, the alleged onset date of her disability. (Tr.[1] 27.) Plaintiff's history of mental impairments dates back decades, as she was diagnosed with depression at age 15 and with anxiety at age 27. (Tr. 23.) At a certain point earlier in her life, Plaintiff also suffered from an eating disorder. (Tr. 49.) Since 1997,

---

[1] All references to "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 10), and not to the internal pagination of the constituent documents.

Plaintiff has been treated by psychiatrist Dr. David Gandler for depression, anxiety, eating disorder, and panic disorder. (Tr. 44, 49, 290.)[2]

Plaintiff has worked full-time in customer service or sales roles for various banks since 1990. From June 1990 to May 1999, she was a "service officer" for a bank. (Tr. 197, 203.) Between September 2000 and July 2004, Plaintiff held the position of sales representative, and then senior sales representative at Fleet Bank. (Tr. 197, 201–02.) Plaintiff then worked as a customer service representative from April 2005 to July 2010 at TD Bank. (Tr. 40, 197, 200.) From August 2011 to December 2012, she worked at Citibank (Tr. 197, 199), and then at Chase Bank from July 2013 to October 2013 (Tr. 197, 198). Her job duties in these roles were generally the same: "mak[ing] appointments[] to meet the business owners in the community," "assist[ing] the customers on the tele[phone]," and being "responsib[le] [for] walk-in customers." (Tr. 41.)

Plaintiff was terminated in 2013 because she "could not handle the environment" and the job "took a major toll [on her] mentally." (Tr. 46.) At the time, Plaintiff was feeling "pressure over meeting sales goal[s]" from her supervisors, and dealing with the diagnosis of her spine illness." (*Id.*) Plaintiff testified that her "concentration ability was really low" and that her depression increased because of her spine illness, which eventually required two surgeries. (Tr. 46, 52.) Plaintiff also underwent a hysterectomy in 2015. (Tr. 278.)

Plaintiff protectively applied for DIB on September 28, 2017, alleging disability as of October 16, 2013, due to depression, anxiety disorder, and mood disorder. (Tr. 59–72.) In conjunction with her application for DIB, Plaintiff underwent a consultative examination in November 2017, with psychologist Dr. Clementa Porcelli. (Tr. 281.) Dr. Porcelli found that

---

[2] Some records in the Administrative Transcript indicate that Plaintiff was first examined by Dr. Gandler in March 1998, as opposed to in 1997. (*See* Tr. 272.) However, this discrepancy is immaterial for the purposes of deciding the pending motions.

2

Plaintiff had difficulty falling asleep, experienced loss of appetite, displayed symptoms of anxiety and depression, and had suffered "panic attacks that include palpitations, sweating, dizziness, breathing difficulties, and trembling[.]" (Tr. 278.)  Upon examining Plaintiff, Dr. Porcelli opined that Plaintiff was mildly to moderately limited with regard to the following: understanding, remembering, and applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; sustaining an ordinary routine and regular attendance at work; and regulating her emotions and controlling her behavior.  (Tr. 280.)  In reviewing Plaintiff's medical history, Dr. Porcelli noted that Plaintiff had been "seeing a psychiatrist named Dr. David Gandler for the past few years," and concluded that the "[r]esults of this examination appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."  (Tr. 278, 280.)[3]

As part of Plaintiff's DIB application, Dr. Gandler submitted three medical opinions and treatments notes from four treatment sessions, spanning from December 2016 to October 2017. (Tr. 23–25.)  These treatment notes include his opinion that Plaintiff is "upset", "sleeps too much," has a "low appetite," "breaks down during job interviews," is "unable to function productively, often having anxiety attacks," and "feels [a] sense of dread all day."  (Tr. 276.)  In his first medical opinion, Dr. Gandler diagnosed Plaintiff with major depression and panic disorder, and included extensive information on her symptoms and limitations, including "lack of energy, no motivation,

---

[3] Plaintiff was also examined by Dr. Olga Yeviskova, a specialist of internal medicine who determined that Plaintiff had neck pain, lower back pain, a history of lumbar spine surgery, lumbar spinal stenosis, and degenerative joint disease of the spine.  (Tr. 282–87.)  As Dr. Yeviskova's examination was limited to Plaintiff's physical impairments, while her disability application is based on her mental impairments, the Court will not recount Dr. Yeviskova's findings in detail.

3

frequent crying, agitation, anhedonia,[4] withdrawal, an inability to concentrate, oversleeping, and frequent panic attacks," as well as impaired concentration demonstrated by Plaintiff's inability to "watch a movie . . . [or] pay attention when someone talks to her." (Tr. 272.)

Dr. Gandler submitted two additional opinions. Following a treatment session on October 29, 2018, Dr. Gandler wrote a detailed treatment note observing that Plaintiff "cannot leave [the] house unaccompanied, [experiences] constant sense of dread, agitation, feels easily overwhelmed, [has] anxiety attacks at least several times a week, [and is] frequent[ly] crying." (Tr. 290.) Dr. Gandler also noted that Plaintiff has had "poor function for over 5 years" and is "easily overwhelmed by almost anything." (Tr. 290, 292.) Finally, Dr. Gandler wrote a Treating Source Statement dated September 3, 2019, opining that "[Plaintiff's] symptoms are disabling" and explaining that Plaintiff "is usually afraid to leave the house because she thinks she will faint in public, [] gets anxiety attacks at home," "and has a constant state of dread." (Tr. 293.)

On January 8, 2018, a state agency medical analyst, Dr. R. McClintock,[5] determined after reviewing Dr. Gandler's treatment notes and other records related to Plaintiff's physical impairments that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are generally not consistent with the evidence of record." (Tr. 65.) Dr. McClintock found that Plaintiff's mental impairments resulted in moderate limitations related to (1) her abilities in understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 64.) Plaintiff's initial application for DIB was denied on January 16, 2018. (Tr. 59–73.)

---

[4] "Anhedonia" is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/anhedonia (last visited 9/30/22).

[5] The record contains neither the first name of Dr. McClintock, nor his specialty.

On February 1, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and she received her hearing notice on May 21, 2019. (Tr. 99.) Plaintiff appeared with her attorney at the time, Elias Malikouzakis, before ALJ Michelle I. Allen on October 17, 2019. (Tr. 33–35.) At the hearing, Plaintiff testified that she lived with her husband, two adult children, and her mother. (Tr. 37.) Although she did not have a driver's license, Plaintiff was able to take trains if she needed to. (Tr. 38.) Plaintiff left the house on average once or twice a week to go to the deli or supermarket, but she also had weeks-long stretches when she did not leave the house. (Tr. 50.) Crowded environments like the supermarket "really bother[ed]" her because of her fear that she was "going to fall and have another spine surgery." (Tr. 51.) Under the direction of Dr. Gandler, Plaintiff was taking several different medications for her mental impairments, including zonisamide, which is an anti-depressant. (Tr. 48; *see also* Tr. 235–37.)

Vocational Expert ("VE") Mitchell Schmidt also testified at the hearing. (Tr. 53–57.) The VE testified that a hypothetical individual with the exertional and mental impairments posed by the ALJ could perform the jobs of addresser, document preparer, and ticket counter. (Tr. 53–54.)

By decision dated October 17, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from September 27, 2018, the date the DIB application was filed, through the date of the ALJ's decision. (Tr. 18–29.) On December 13, 2019, Plaintiff requested a review of the ALJ's decision. (Tr. 14–17.) On October 2, 2020, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's determination the Commissioner's final decision. (Tr. 1–3.) Thereafter, Plaintiff timely[6] commenced this action on December 4, 2020. (Complaint, Dkt. 1.)

---

[6] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g)

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[7] First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). If the plaintiff does suffer from an impairment or

---

of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The SSA's final decision was issued October 2, 2020 (Tr. 1–3), and the Complaint was filed on December 4, 2020 (Complaint, Dkt. 1), 58 days after the presumed receipt of the decision, rendering this appeal timely.

[7] Some cases cited below involve DIB regulations, while others involve Social Security Income ("SSI"), but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020). The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

6

combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether Plaintiff's impairment(s) meet(s) or medically equal(s) one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have such an impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

    Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of October 16, 2013 through her last-insured date of December 31, 2018. (Tr. 20.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: obesity, adjustment disorder with mixed anxiety and depressed mood, cervical radiculopathy, and lumbar disc disease with spondylolisthesis."[8] (*Id.*) At step three, the ALJ found

---

[8] "Spondylolisthesis is a spinal condition that causes lower back pain. It occurs when one of [the] vertebrae, the bones of [the] spine, slips out of place onto the vertebra below it." Cleveland

7

that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 21.) The ALJ further determined that the Plaintiff only had moderate limitations in the four broad categories used for assessing mental impairments: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves.[9] (*Id.*)

The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work[10] . . . except that [she] can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; she can stoop and crouch occasionally; [] can never kneel or crawl[;]… can never work at unprotected heights [or] work with moving mechanical parts, and never work in extreme cold. The claimant has certain nonexertional limitations, in that she is able to perform only simple, routine and repetitive tasks; can interact occasionally with supervisors, co-workers, and the public; and is able to tolerate occasional changes in a routine work setting. The claimant would miss one day per month for work.

(Tr. 22.) At step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a customer service representative. (Tr. 27.) Finally, at step five, the ALJ found that there are a significant number of other jobs in the national economy that Plaintiff can

---

Clinic, https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis (last visited on 9/30/22).

[9] In cases involving mental health, a mental health impairment is severe when the plaintiff has either one "extreme" or two "marked" limitations among these four areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(B). An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.*

[10] The Act's regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). The regulations further note that a sedentary job "is defined as one which involves sitting," but also requires "a certain amount of walking and standing . . . in carrying out job duties." *Id.*

8

perform, including addresser, document preparer, and ticket counter.  (Tr. 28.)  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 29.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and brackets omitted).  In determining whether the Commissioner's findings are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards.  (Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot."), Dkt. 11-1, at 8.)  As discussed below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record, and arrived at

9

an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15–27 (E.D.N.Y. Sept. 28, 2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence).

I.      The ALJ's Improperly Assessed the Medical Source Opinions

An ALJ's RFC determination must be supported by substantial evidence, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)); *see also Talavera*, 697 F.3d at 151. Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021). As noted, in determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(a)(3). Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417.

The Act's regulations also require an ALJ to explain "how [she] considered the supportability and consistency factors for a medical source's medical opinions" in making a determination of disability. 20 C.F.R. § 404.1520c(b)(2). With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Similarly, as to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative

10

medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). Although ALJs are no longer directed to afford controlling weight to treating source opinions, the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021) (collecting cases).

Here, the ALJ reviewed the following in determining Plaintiff's mental impairments: (1) medical opinions and a limited set of treatment notes from her long-time treating psychiatrist, Dr. Gandler; (2) a medical opinion from the one-time consultative examiner, Dr. Procelli; and (3) the findings of Dr. McClintock, the consultative physician who did not examine Plaintiff. (Tr. 23–27.) Although the ALJ stated that he found the opinions of all three doctors to be "persuasive" and noted that Dr. Gandler's opinion was entitled to deference in light of Dr. Gandler's "long treating history with" Plaintiff (Tr. 23, 24, 26), the ALJ disagreed across the board with Dr. Gandler's assessments.

The ALJ's conclusion that Dr. Gandler's assessments of the severity of Plaintiff's impairments "were not wholly supported by specific findings from clinical examination" (Tr. 23), was erroneous and not supported by substantial evidence. One of the primary reasons for the ALJ's disagreement with Dr. Gandler was that Plaintiff demonstrated "a much greater functional capacity" than Dr. Gandler described, and the ALJ's prime example was the fact that Plaintiff could "tak[e] public transportation independently." (Tr. 23.) In fact, the ALJ mentions Plaintiff's ability to take public transportation three times in her decision: once to explain why she disagreed with Dr. Gandler (Tr. 23), another time to explain why she found Dr. Procelli's conclusions

11

persuasive (Tr. 24), and once more in determining why she did not find Plaintiff's own statements about her impairments to be credible (Tr. 26). However, as this Court has explained before, "a claimant's . . . ability to use public transportation is not a factor that should be considered in determining a claimant's limitation in social functioning." *See Emsak v. Colvin*, No. 13-CV-3030 (PKC), 2015 WL 4924904, at \*14 (E.D.N.Y. Aug. 18, 2015). "[The Second] Circuit has repeatedly recognized that [a] claimant need not be an invalid to be found disabled." *Colon v. Astrue*, No. 10-CV-3779 (KAM), 2011 WL 3511060, at 14\* (E.D.N.Y. Aug. 10, 2011) (quotations omitted). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (internal quotation marks omitted). While Plaintiff's ability to navigate public transportation might be of some relevance to mental functioning, here, the ALJ erred by assigning conclusive weight to it and relying on it to dismiss the opinions of Plaintiff's long-time treating psychiatrist. Therefore, the ALJ's decision to discount Dr. Gandler's opinion was not supported by substantial evidence.

The ALJ also claimed that Dr. Gandler "provided reports which were not entirely persuasive, since they were inconsistent with Dr. Gandler's own records and with the case record as a whole." (Tr. 26.) The ALJ appears to be referring to the fact that Dr. Gandler noted that Plaintiff's memory and orientations were both "intact" in his October 13, 2017 opinion (Tr. 272), but then states in the same opinion that Plaintiff's "understanding and memory" were "limited" by the fact that she "cannot attend to what people say to her so she feels [that] she forgets everything" (Tr. 273.) The Court does not see these statements as so contradictory as to warrant discrediting Dr. Gandler's overall assessment of Plaintiff's impairments. The fact that Plaintiff *feels* as if she

12

"forgets everything," while supporting Dr. Gandler's assessment that Plaintiff's understanding and memory were limited in some way, does not mean that her memory could not be intact in other ways. A similar "contradiction" that the ALJ found in Dr. Gandler's October 2018 opinion was also too minor to discredit his decades' long treating relationship with Plaintiff. The Court therefore finds that the ALJ erred by using irrelevant considerations and small errors to disfavor the treating psychiatrist's opinions in favor of the opinions of the non-examining state analyst and the one-time consultative examiner, especially in light of the Second Circuit's repeated "caution[] that ALJs should not rely heavily on the findings of consultative physicians after a single examination," particularly "in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Furthermore, to the extent the ALJ perceived inconsistences between Dr. Gandler's opinions and his treatments notes, she had an obligation to seek clarification from the doctor and to attempt to reconcile that discrepancy, rather than simply dismissing Dr. Gandler's opinions entirely. *See Johnson v. Comm'r of Soc. Sec.*, No. 19-CV-3255 (PKC), 2020 WL 5802331, at *6 (E.D.N.Y. Sept. 29, 2020) ("Furthermore, to the extent the ALJ believed that [the treating physician's] treatment notes contradicted his medical opinion, the ALJ had a duty to supplement the record with further inquiry from [the treating physician] or other additional evidence in order to reconcile the seeming inconsistency."). The ALJ's failure to do so was error.

Accordingly, because the ALJ's determination of Plaintiff's mental impairments was not supported by substantial evidence, remand is appropriate.

## II.     Plaintiff's Remaining Arguments

Because the Court finds that remand is required to correct the errors discussed above—namely, that the ALJ's rationale for disagreeing with Dr. Gandler's opinion was unsupported by

13

substantial evidence—it need not address whether the ALJ's RFC determination with respect to Plaintiff's physical limitations was supported by substantial evidence. *See Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 331 (S.D.N.Y. 2010) ("Because I find legal error requiring remand, I need not consider whether the ALJ's decision was otherwise supported by substantial evidence.") (internal citations omitted).

Finally, the Court notes that this case was first filed in December 2020, and judicial review was delayed several months by the Commissioner's multiple requests for extensions of time to file the administrative record. (*See* Dkts. 7, 8, 9.) Given the passage of time and in order to avoid reliance on stale opinions, the Commissioner on remand should further develop the record in an expeditious manner and obtain all necessary updated medical information when determining Plaintiff's RFC.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
        Brooklyn, New York